GREENBERG TRAURIG, LLP
Tyler R. Andrews (SBN 250686)
andrewst@gtlaw.com
8565 Jamboree Road, Suite 500
Irvine, CA  92612-4410
Telephone: (949) 732-6500
Facsimile: (949) 732-6501

GREENBERG TRAURIG, LLP
Matthew P. Hoxsie (Admitted *pro hac vice*)
hoxsiem@gtlaw.com
2375 E. Camelback Rd., Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8471

Attorneys for Defendant,
CIRCLE K STORES INC.

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. PETTERSEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CIRCLE K STORES INC., an Arizona Corporation, and DOES 1-10, <br><br> Defendant. | CASE NO. 3:21-cv-237-RBM-BGS <br><br> [Assigned to Hon. Ruth Bermudez Montenegro and Magistrate Judge Bernard G. Skomal] <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** <br><br> Date: January 9, 2023 <br> Courtroom: 5B (5th Floor) <br> Judge: Hon. Ruth Bermudez Montenegro |

## <u>**TABLE OF CONTENTS**</u>

I.  INTRODUCTION ........................................................................................1

II.  BACKGROUND ........................................................................................3

    A.  Circle K's Various Discounts and Advertisements................................3

    B.  Plaintiff's Purchases of Cigarettes .....................................................4

III.  LEGAL STANDARD ................................................................................8

IV.  ARGUMENT .............................................................................................8

    A.  The Advertisements Are Neither False Nor Misleading................................9

    B.  The Advertisements from February 2018, March 2018, and May 2018 Cannot be Considered False or Misleading Because There is No Dispute that the 2-Pack Discount Applied to Purchases of Two Packs "or More," which Included Carton Purchases................................................14

    C.  Advertisements Listing a Specific Per-Pack Price Cannot be Considered False or Misleading Because No Reasonable Consumer Would Objectively Believe the Advertisements Applied to a Carton Purchase................................................15

    D.  Plaintiff Lacks Standing ................................................................16

    E.  Plaintiff Cannot Establish Reliance Beyond His First Purchase .................17

    F.  Plaintiff Cannot Establish Reliance After December 4, 2020, When Plaintiff Filed His Complaint ................................................................18

    G.  Plaintiff Cannot Establish Reliance After December 29, 2020 (at-the-Latest) Because he Knew that the Discount did not Apply Five-Times per Transaction by That Time ................................................................19

V.  CONCLUSION................................................................................20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

683257232

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................8

*Barrett v. Milwaukee Elec. Tool, Inc.*,
No. 14-cv-1804 JAH (DHB), 2016 WL 4595947 (S.D. Cal. Jan. 26,
2016) ........................................................................................................11

*Beasley v. Conagra Brands, Inc.*,
374 F. Supp. 3d 869 (N.D. Cal. 2019)........................................................9

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007)........................................9, 14, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..............................................................................8, 17

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................................16, 17, 18, 19

*Day v. AT&T Corp.*,
63 Cal.App.4th 325 (1998) .......................................................................10

*Dumas v. Diageo PLC*,
No. 15cv1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016)....................13

*Hairston v. S. Beach Beverage Co.*,
No. 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012)............14

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ...................................................................16

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011)..........................................................................12

*Lavie v. Procter & Gamble Co.*,
105 Cal.App.4th 496 (2003) ........................................................9, 10, 11

*Lorenzo v. Qualcomm Inc.*,
603 F. Supp. 2d 1291 (S.D. Cal. 2009).....................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................. 8

*Morizur v. Seaworld Parks & Ent., Inc.*,
   No. 15-cv-2172, 2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) ................... 13

*Simpson v. Kroger Corp.*,
   219 Cal.App.4th 1352 (2013) ............................................................ 14

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   865 F.2d 1539 (9th Cir. 1989) ........................................................... 8

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ............................................ 8, 9, 14

*Wilson v. Frito-Lay N.A., Inc.*,
   260 F. Supp. 3d 1202 (N.D. Cal. 2017) ................................................. 9

## **Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................. 8

Cal. Bus. & Prof Code § 17500 ............................................................. 8

Cal. Bus. & Prof. Code § 17535 ............................................................ 12

## **Court Rules**

Federal Rule of Civil Procedure 56(c) ........................................................ 8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

683257232

# I.   INTRODUCTION

Plaintiff William D. Pettersen's ("Plaintiff") Complaint alleges Defendant Circle K Stores Inc. ("Defendant" or "Circle K") falsely advertised discounts on "packs" of cigarettes because Circle K failed to give Plaintiff a discount when he purchased a "carton" (which is the equivalent of a 10-pack bulk purchase).  Contrary to Plaintiff's claims that Circle K's "marketing materials misrepresented or omitted to state that Defendant's promotional [two-pack] discounts were not automatically applied to carton purchases," Compl. ¶ 17, the advertisements were not false or misleading, because they accurately stated that discounts would be applied to purchases of "two packs."  A "carton," which Plaintiff alleges he purchased, is a separate UPC-coded item and not a "pack," regardless of the fact that a carton consists of the equivalent of ten packs.  It is no different, in fact, from a 24 can case of beer, which is separate from a single can, or a pizza pie, which is priced separate from a single slice.  The Court should not reward Plaintiff's (an attorney) unjustified inventiveness here; the advertisements are not objectively false or misleading to the reasonable consumer.

Stated simply, Circle K *did not* engage in an improper advertising practice regarding cigarette cartons.  Instead, Circle K advertised various discounts, rebates, and other savings on *packs* of cigarettes over the past several years.  These advertisements were expressly directed at purchasers of "packs" of cigarettes.  Defendant's Statement of Facts ("SOF") ¶ 2.  Importantly, most of the advertisements at issue state "per pack" when you buy "2."  Moreover, many of these advertisements listed a specific per-pack price, which reflected various customer rebates and discounts on "2-pack pricing," which were variously funded by either the cigarette manufacturer, by Circle K itself, by the individual store or region displaying the discounts, or by a combination of these.  Tellingly, there is no evidence or allegation in this case that *any* of these advertisements were false or misleading in any manner as they applied to cigarette pack purchasers.

A carton, by contrast, is a separately priced bulk item with its own UPC (universal product code).  SOF ¶ 3.  As with nearly every bulk-packaged item purchased by

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

683257232

consumers from bottled water to toilet paper to pizza and beyond, a carton of cigarettes carries its own "built-in" per-unit discount. *Id.* Just as consumers do not expect an advertised discount on single (or double) pizza slices to apply to each slice in a full pie, consumers would not reasonably expect an advertised one or two-pack discount to apply to each separate pack of cigarettes in an already-discounted and separately priced bulk carton purchase. This is common sense. Nevertheless, to the extent a discount funding mechanism *was* extended to carton purchases – such as a once-per-transaction $1 loyalty discount on all cigarette products – those "discounts" were, in fact, properly applied by Circle K. Plaintiff's own carton purchase data bears that out.

Indeed, so devoid of merit is Plaintiff's claim that neither Plaintiff nor his retained marketing expert have identified one single other customer who was purportedly misled by Circle K's various cigarette advertisements when purchasing a carton. SOF ¶ 70. But what truly makes this case ripe for summary judgment on Plaintiff's individual claim for relief, besides his failure to identify even a single other customer that purportedly suffered any confusion or damage as a result of Circle K's advertisements, is that Plaintiff himself *continued* to purchase cartons of cigarettes from Circle K *after* filing the very complaint in which he now alleges that Circle K's advertisements were false or misleading. Plaintiff – a lawyer experienced in false advertising law – kept buying cigarettes, excusing his repeat purchases and stating Circe K must have "got me again." SOF ¶ 35. This is simply not a false advertising or unfair competition case.

Even further detrimental to Plaintiff's case is the fact that no reasonable consumer would purchase a carton of cigarettes *because of* a specific advertised Circle K discount yet inexplicably fail to notice that the expected discount – the requisite "but for" reason they made the purchase in the first place – was not applied at the time of purchase. Indeed, Plaintiff acknowledged during his deposition that he did, in fact, recognize and know when Circle K did *not* apply the carton discount he was supposedly entitled to, but he continued to purchase cartons of cigarettes from Circle K regardless.

For these reasons and more, Circle K respectfully requests the Court grant its motion

683257232

for summary judgment in its entirety.  In the alternative to a complete grant of summary judgment in Circle K's favor, Circle K respectfully requests the Court grant partial summary judgment: (1) precluding any claim that "or more" advertisements were false or misleading; (2) precluding any claim that an advertisement listing a specific per-pack price was false or misleading; (3) precluding Plaintiff from seeking recovery for subsequent purchases; and/or (4) precluding Plaintiff from seeking recovery for purchases made after December 4, 2020 or (5) after December 29, 2020.  Resolving these issues will substantially narrow and frame the issues for trial, if not resolve this litigation in its entirety.

## II.   BACKGROUND

### A.   Circle K's Various Discounts and Advertisements

Circle K offers various discounts on cigarettes, primarily on packs.  SOF ¶ 1.  Circle K also sells cartons of cigarettes – which consist of 10 packs.  SOF ¶ 3.  But a carton is not simply a 10-pack purchase.  It is a separately-coded unit, just like a case of waters is sold separately from a bottle, a case of beer is sold separately from a can, and a pizza pie is sold separately from a slice.  SOF ¶ 3.  A pack's pricing consists of its base price, any manufacturer coupons, rebates, allowances, and discounts, as well as any Circle K self-funding, discounts, or offers (either at a national, business unit, or store level).  A carton price may consist of the same, or similar, funding mechanisms, but does not necessarily.  SOF ¶ 5.

During the course of this litigation, Circle K has produced dozens of advertisements showing the various multi-pack discounts.  SOF ¶ 1.  In September 2016 (prior to the class period in this case) Circle K advertised "Save $1 + tax/per pack - when you buy 2 packs." SOF ¶ 6.  The advertisement was exclusive and available only to customers who downloaded the Circle K mobile app, and was a Marlboro manufacturer rebate only (not an internal discount provided by Circle K), which excluded packs of Marlboro Special Blends, Blacks, and 72's.  Marlboro offered a similar loyalty program discount in 2017, but only for 16 weeks, from May 3, 2017 to June 27, 2017, and from August 30, 2017 to

September 25, 2017.  SOF ¶ 7.  The loyalty program discount was to "Save $1 + when you buy 2," excluding Special Blends, Blacks, and 72's.  *Id.*  Marlboro's loyalty program also ran for limited weeks in 2018, 2019, and 2020 as well.  SOF ¶ 8.  Beginning near the end of 2020, Circle K offered a separate Tobacco Club mix and match program, running from November 4, 2020 through April 18, 2021.  SOF ¶ 11.

These advertisements did not reflect a single Circle K discount program, as some advertisements built in multiple funding mechanisms and rebates to display a specific per-pack price.  SOF ¶¶ 13–14.  For example, in July 2020, Circle K advertised a savings of $2.30 when the customer bought 2 packs, for a total per-pack purchase price of $7.74 plus tax.  SOF ¶ 13.  Plaintiff has produced no evidence that these prices were not properly applied to all applicable pack purchases as advertised.

The advertised price could include, but did not necessarily include, an "MPO Allowance," "Promotional Allowance 1," "Promotional Allowance 2," "Total Allowances," "Circle K Funded Pk," and "Circle K Funded 2 Pack" markdowns.  SOF ¶ 14.  Circle K also included for certain carton purchases a "Circle K Funded Carton" markdown. SOF ¶ 15.  There is no evidence that this price markdown was not applied to any carton purchases in this case.

Importantly, several advertised discount funding mechanisms in fact *did apply to carton purchases*.  For example, the $1 loyalty discount applied once-per transaction to *any* cigarette purchase of two packs or more (including a carton purchase).  SOF ¶ 16; SOF ¶¶ 72–73 (recognizing the import of "or more," for a JC Penney advertisement offering "$10 off your purchase of $25 or more," means "at least" and that a JC Penney customer would expect to save just $10 regardless whether they spent $25, $35, or $50).  Marlboro also applied $1 coupons to each pack purchase and $10 to each carton.  SOF ¶ 59.

### B.  Plaintiff's Purchases of Cigarettes

Plaintiff is a long-practicing attorney, with familiarity in bringing false advertising and unfair competition claims in California.  SOF ¶¶ 19–20.  Plaintiff is also a long-term (though sometimes intermittent) smoker, dating back to his days in college.  SOF ¶ 21.

During the class period alleged here, Plaintiff stated that he smoked almost exclusively Marlboro cigarettes, smoking at most a pack a day during his peak smoking periods. SOF ¶ 22.  Plaintiff primarily purchased Marlboro Special Blend cigarettes and on rare exception Benson & Hedges.  *Id.*

Plaintiff stated he purchased cartons 70-85% of the time, compared with only a few pack purchases.  SOF ¶ 23.  When asked why he would buy a "multi-pack," Plaintiff stated that if the ad said "'Buy two, get $1.50 off,' well, I'd buy two to get the discount."  SOF ¶ 24.

Plaintiff did not recall precisely what the Circle K advertisements he purportedly relied on said.  SOF ¶ 25.  But the "gist" of the ads, according to Plaintiff, was that if he bought two packs, he would get $1.50 off."  *Id.*  The ads were not posted continuously however.  SOF ¶ 10.  And Plaintiff could not recall the specific times or store locations when the different ads at issue were posted.  SOF ¶ 26.  Moreover, Plaintiff stated he neither saw nor relied on ads that listed a specific per-pack price – *e.g.*, ads placed in July 2018, November 2018, January 2019, May 2019, March 2019, December 2019, May 2020, July 2020.  SOF ¶¶ 27–28.

Plaintiff regularly visited Circle K predetermined to purchase a carton of cigarettes, including at times when there were no signs or advertised discounts posted.  SOF ¶ 29.  Even if an advertised discount was not posted, Plaintiff stated that he would still purchase a carton.  SOF ¶ 31.

When asked how his purchases were rung up – as cartons or packs – Plaintiff stated that typically the cashier would scan a carton, but at some point Plaintiff "realized when they scanned the carton, I wasn't getting the discount," so he directed the cashier to ring up his purchase as ten separate packs.  SOF ¶¶ 32–33.  Plaintiff could not recall when he first learned to break up his transactions into five separate transactions to maximize what were once-per-transaction discounts, but stated it was probably "[a] couple years ago."  SOF ¶ 43.  At the same time, Plaintiff also stated that many times he simply forgot to ask the cashier to ring up his purchases as separate packs.  SOF ¶ 35.

Plaintiff generally paid for cigarettes with a $100 bill, and he believed he overpaid when he only got back $9 instead of $20.  SOF ¶ 36.  "If it was around $79, $80, then I would think, okay, well, they gave me the discount."  SOF ¶ 37.  Plaintiff sporadically checked his receipt to confirm whether he received or didn't receive his discount, though Plaintiff also stated that he generally did not take it.[1] SOF ¶ 38 ("Sometimes they hand it to you and you take it, and you get out to your car, and I go 'Why did I get this receipt?'")).  For occasions when he got back only $9, Plaintiff first stated that he did not ask for a refund, stating he wouldn't notice until he left and that "[e]ither I wanted to get home and I wasn't going to go quibble with them about ten bucks or $7.50 or whatever it was" and that he had "enough money, and I just didn't want to turn my car around."  SOF ¶ 41.  When informed that he should have realized at the register that only $9 was handed back to him, Plaintiff changed his testimony by stating he would have asked the cashier to back the transaction out.  SOF ¶ 40.  Plaintiff failed to keep any receipts, and thus has no records supporting purported cash purchases.  SOF ¶ 41.

For credit card purchases, Plaintiff produced his bank account statements purporting to show his purchases at Circle K.  SOF ¶ 50.  But because Plaintiff purchased sodas and other items, and because his bank statements showed only the total purchase price – without itemization – Plaintiff was unable to identify specific carton purchases or amounts paid.  SOF ¶ 51 ("It seems that way.")).  Instead, Circle K utilized Plaintiff's credit card statements, which showed his card number, the date of purchase and amount, and the store location where he purchased cigarettes, to pull the corresponding backup data to review each purchase that Plaintiff made.  SOF ¶ 52.  The backup data includes the item code, prices, and any funding mechanisms that were applied.

For example, Plaintiff initially contended that his May 6, 2020 purchase for $76.38 and his May 11, 2020 purchase for $80.07 both reflected carton purchases.  SOF ¶ 56.  But while the backup data showed that the $76.38 May 6 purchase was a carton, the $80.07

---

[1]  If Plaintiff had checked his receipt he would have seen that the multi-pack discount applied once per transaction.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

683257232

May 11 purchase was for ten individual packs.  SOF ¶ 57–58.  Both purchases had $1 per pack rebates applied ($1 per pack or $10 per carton).  SOF ¶ 59.  And Plaintiff also received an additional $1 per transaction Altria (Marlboro) loyalty discount for his carton purchase (by entering his phone number).  SOF ¶ 60.  Plaintiff did not enter his phone number during his $80.07 May 11 purchase, and thus did not receive the Altria (Marlboro) loyalty discount.  SOF ¶ 61.

As for his damages, Plaintiff stated in his initial disclosure that his "out-of-pocket losses are estimated at $200."  SOF ¶ 48.  When asked how he calculated his damages, Plaintiff stated during his deposition: "exactly how I came up with the $200, I don't know.  Roughly, my thinking went like this: I felt . . . I was damaged by failure to give discounts by Circle K over the pertinent years, approximately $10 per time it happened, and I estimated that it probably happened about 20 times.  And I will tell you now, as I'll tell the court, those numbers aren't precise.  There's no way they could be by my examination at the time I came up with this number, but that's about as close as I could get."  SOF ¶ 49.  Plaintiff's Complaint, however, claimed his savings should have been either $5 or $7.50 each time the discount was not applied.  Compl. ¶¶ 5, 7.  When asked why Plaintiff stated $10 in his disclosure rather than $7.50 as stated in his Complaint, Plaintiff stated he "shouldn't have."  SOF ¶ 49.  (Plaintiff's Motion for Class Certification suggests that the savings per transaction was only between $1 to $2.80 per transaction.  Motion for Class Certification at 18.)

Plaintiff acknowledged that the advertisements required him to enter his phone number, but stated there were times he would forget to enter it. SOF ¶ 62 ("[Entering my number] was just an idle act after the first few months, so I didn't bother.")).  Plaintiff later stated he did not recall entering his phone number at all during the past three or four years. *Id.*  Plaintiff further acknowledged that certain advertisements excluded the special blends variety, to which Plaintiff stated he "would advise anyone looking at this ad not to expect a dollar off on Marlboro Special Blends, Blacks, or 72s.  That's rather clear."  SOF ¶ 63.

683257232

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Material facts are defined to be facts that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* The court may not weigh the evidence but rather draws all justifiable inferences in the nonmovant's favor. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such circumstances, summary judgment should be granted. *Id.* at 323.

## IV.   ARGUMENT

California's UCL prohibits "unfair competition" which includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200; *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (explaining that the statute is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of California's False Advertising Law (§ 17500)). "As an initial matter, when plaintiffs' unfair competition prong claim overlaps entirely with their claims of fraud, the plaintiffs' unfair prong claim cannot survive if the fraudulent prong claim fails." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 910 (N.D. Cal. 2020). Thus, summary judgment in Circle K's favor on the FAL claim results simultaneously in Circle K's favor on the UCL claim.

The Court should grant summary judgment in Circle K's favor because the complained-of advertisements are not false or misleading, and because Plaintiff lacks standing to pursue his claims. At the very least, the Court should grant partial summary judgment in Circle K's favor as to certain advertisements, for which there can be no claim that they have a tendency to mislead, and with respect to any secondary purchase or purchase purportedly made *after* Plaintiff first claimed to have been deceived.

## A.     The Advertisements Are Neither False Nor Misleading

To prevail on its FAL claim (and thus on its UCL claim), Plaintiff first must demonstrate an actual false statement or at a minimum that an advertisement was likely to deceive. "Likely to deceive" requires more than a "mere possibility" that the advertisement might conceivably be misunderstood by some consumers viewing it in an unreasonable manner; rather it indicates "that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003).

Second, Plaintiff must demonstrate that he actually relied on the false or misleading advertisement when entering into the transaction. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007). "To establish actual reliance, the plaintiff must [establish] that the defendant's misrepresentations or nondisclosure was an *immediate cause* of the plaintiff's injury-producing conduct." *Williams*, 449 F. Supp. 3d at 912 (quotations omitted) (emphasis added). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the Plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Id.*

Further, to meet his burden to demonstrate reliance, Plaintiff must demonstrate a "material" misrepresentation – such that a reasonable person would attach importance to its existence or nonexistence in determining whether to enter into a transaction. *Wilson v. Frito-Lay N.A., Inc.*, 260 F. Supp. 3d 1202, 1208–09 (N.D. Cal. 2017); *see also Beasley v.*

*Conagra Brands, Inc.*, 374 F. Supp. 3d 869 (N.D. Cal. 2019) (stating the challenged statements/advertisements must be judged against the "reasonable consumer" standard).

Here, Plaintiff has not set forth a triable issue or genuine dispute regarding Circle K's advertisements, for which no reasonable consumer would expect to receive a $5 or $7.50 discount on top of an already discounted carton purchase. Indeed, Plaintiff has not presented any evidence – separate from his own self-serving testimony and the conclusory opinions of his expert – that Circle K's discount advertisements were likely to mislead a reasonable consumer.

First and foremost, the advertisements cannot be considered actually false because there is no dispute that the 2-pack discount price was applied to purchases of two packs; indeed, Plaintiff does not allege the discount failed to apply to any purchases of just two-packs. Instead, Plaintiff's theory is that the advertisement does not include an asterisk stating that it does not apply to a "carton" purchase, which is a separate UPC-bundle of cigarette packs. Because the advertisements are not actually false, Plaintiff must show that they are "*likely* to mislead or deceive." *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332 (1998). Plaintiff has not done so, nor has he presented any triable issue or genuine dispute that "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal.App.4th at 508.

### 1.    The advertisements were not likely to deceive

Contrary to Plaintiff's claim that "Defendant's marketing materials misrepresented or omitted to state that Defendant's promotional discounts were not automatically applied to carton purchases," Compl. ¶ 17, the Circle K advertisements at issue were not directed to carton purchasers but were instead directed at individual pack purchasers to incentivize the individual purchaser to purchase two rather than one. SOF ¶ 2. The rationale to target individual pack purchasers, without any need or intent to advertise to a carton purchaser, is a matter of common sense. Cartons are in short a bulk purchase, like a 24-can case of beer or case of bottled waters, and consumers commonly understand that bulk purchasers

683257232

have pre-applied per-unit discounts built into their standard price.  No customer seeing a restaurant's advertisement for $1 off a slice of pizza would expect or demand to receive a $16 discount off of a large 16-slice pie.  *Cf. Barrett v. Milwaukee Elec. Tool, Inc.*, No. 14-cv-1804 JAH (DHB), 2016 WL 4595947, at *4 (S.D. Cal. Jan. 26, 2016) (explaining that dismissal of a complaint is warranted where a consumer plaintiff disregards "well-known facts of life").  Accordingly, no reasonable customer would expect that *an additional* $5 to $7.50 in discounts should be applied based on the individual packs in a separately priced, bulk, UPC-coded cigarette carton purchase.  SOF ¶ 3.

Even taking the evidence in Plaintiff's favor, Plaintiff has not demonstrated the existence of any genuine dispute that Circle K's advertisements were "such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie*, 105 Cal.App.4th at 508.  Plaintiff has produced *no* evidence that anyone *other than the Plaintiff* was purportedly deceived or suffered damages from the advertisements at issue.  Nor is Circle K aware of any complaints by other carton purchasers related to the advertised discounts.  SOF ¶ 76.  And while Plaintiff retained a marketing expert in this case, Mr. Londre, his expert report fares no better.  Mr. Londre did not speak to a single Circle K customer, did not conduct a single consumer survey, and provides no support for his supposition that advertisements stating "packs" but not "carton" would nevertheless be understood by the average consumer to apply to carton purchases.  Instead, he offers only an unfounded and conclusory opinion that the advertisements at issue were misleading.  SOF ¶ 73 (Iyengar Report ¶ 12 ("[T]he Londre Report offers a very general and theoretical discussion of how consumers broadly view information in the marketplace.  Mr. Londre does not present any data from consumers in the relevant population to support his conclusions regarding how a 'reasonable consumer' would interpret the materials at issue."); Iyengar Report ¶¶ 16–19 (noting the importance of surveys for false advertising

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

cases)[2]).  Furthering that point, Mr. Londre conceded that he (1) was not aware of any other customer, besides Plaintiff, that was purportedly confused or misled and (2) would not be able to say that there were any other Circle K customers that were misled.  SOF ¶ 70.  Accordingly, Mr. Londre's expert report should be rejected for purposes of this Motion as it does not raise any genuine issues of triable fact.  And rather than support Plaintiff's claims, Mr. Londre undermined them, as he nevertheless confirmed that the plain reading of the advertisement meant that the customer would only expect the discount when they bought two "packs" from Circle K.  SOF ¶ 67.

In short, Plaintiff has not met his burden of establishing a genuine dispute that Circle K's advertisements were likely to mislead, let alone false.

### 2. *Plaintiff has not established (and cannot establish) reliance*

California's UCL and FAL statutes require "that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law." *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011) (citing §§ 17204, 17535).  Courts have interpreted the phrase "as a result of" to mean "caused by." *See, e.g.*, *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1303 (S.D. Cal. 2009) (citing *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855 (2008)).  Accordingly, "a plaintiff proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements." *Kwikset*, 246 P.3d at 888.

Plaintiff cannot establish causation (reliance) here.  Plaintiff testified that it was "in great part" his habit, and in great part convenient to stop at Circle K to purchase cartons because it was close to his house.  SOF ¶ 30.  He further stated that he went to Circle K *with the already-formed intent* to buy a carton, and that he would buy a carton *even if there*

---

[2] Worse still, when asked to give his opinion what customers should expect from the advertisements, Mr. Londre stated only that he "can read the words for you."  SOF ¶ 71.  But a marketing expert's testimony, if it is to help the Court or the finder of fact in any way, has to consist of more than simply offering to "read the words."  As such, Mr. Londre's testimony should be excluded from this matter altogether, which will be the subject of a separate motion.

683257232

*was no advertised discount*. SOF ¶¶ 30–31. As a result, Plaintiff cannot possibly establish that he would not have purchased a carton *but for* the advertisements – because by his own admission the store advertisements were immaterial to his ultimate purchasing decisions. And any argument to the opposite, given Plaintiff's testimony, is simply not credible. *See Morizur v. Seaworld Parks & Ent., Inc.*, No. 15-cv-2172, 2020 WL 6044043 (N.D. Cal. Oct. 13, 2020) (rejecting, at trial, plaintiff's UCL claim against Sea World based on a lack of credibility of named plaintiff's evidence that she would not have bought a Shamu plush toy, but for Sea World's alleged misstatement about its treatment of killer whales; stating "reliance is an essential element of a plaintiff's statutory standing to sue under the UCL [and] FAL.").

Moreover, Plaintiff cannot establish *reasonable* reliance where consumers, who purportedly purchased a carton *because of* a specific Circle K advertised discount for "two packs," could easily verify their purchase price, request a refund, and/or request that the carton purchase be broken up into five separate two-pack purchases – as Plaintiff did. As demonstrated by Plaintiff's testimony, he would immediately know that he did not receive a purported discount because his carton purchase price was $90 instead of $70 or $80, and that recognition would occur at the cash register. SOF ¶¶ 36–37. So too a customer specifically relying on the advertisements at issue would (and could) instantly see their purchase amount and/or check their receipt, which individually lists each item's purchase price and any applicable discounts. SOF ¶¶ 38, 53. In both circumstances, the customer could cancel their purchase or request a refund – which Plaintiff stated he did. SOF ¶ 40.

Just like packaging claims, the simple means by which a consumer's purported misconception in this case could be clarified – i.e., confirming the price paid at purchase and/or reviewing their own receipt – renders Plaintiff's claims objectively unreasonable. *See, e.g.*, *Dumas v. Diageo PLC*, No. 15cv1681 BTM(BLM), 2016 WL 1367511 at *3 (S.D. Cal. Apr. 6, 2016) (rejecting claim that consumer was deceived into believing that Red Stripe beer is brewed in Jamaica because of representation that it is "Jamaican-style Lager," because the bottom of the packaging states that it is brewed and bottled by the Red

Stripe Beer Company in Pennsylvania); *Simpson v. Kroger Corp.*, 219 Cal.App.4th 1352, 1372 (2013) (rejecting claim that prominent use of "Butter" on product label would lead a reasonable consumer to believe he had purchased a product containing only butter, because the top and side panels of the container said the product contained canola or olive oil in addition); *Hairston v. S. Beach Beverage Co.*, No. 12-1429-JFW (DTBx), 2012 WL 1893818, at *4–5 (C.D. Cal. May 18, 2012) (rejecting claim that label of vitamin-enriched drink was deceptive where the language was not used "in a vacuum" and any ambiguity was clarified by the detailed information in the ingredient list).

Plaintiff's explanation for why he kept purchasing cigarettes at Circle K – that it was his habit and because Circle K was close to his home, and that he would purchase cigarettes even if no discount was offered – further demonstrates the *immaterial* nature of the discount to Plaintiff. *cf. Williams*, 449 F. Sup. 3d at 912 (stating a plaintiff "may establish that the defendant's misrepresentation is an immediate cause of the Plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct."). The common-sense inference, and the only inference supported by Plaintiff's testimony, is that customers visited Circle K, out of habit or convenience, with the preformed intent to purchase cartons *regardless* of the advertisements posted at the store when they arrived. This is fatal to Plaintiff's false advertising claim. *Cf. Cattie*, 504 F. Supp. 2d at 946 (dismissing claim for failure to demonstrate reliance or that there was a material misrepresentation).

**B.  The Advertisements from February 2018, March 2018, and May 2018 Cannot be Considered False or Misleading Because There is No Dispute that the 2-Pack Discount Applied to Purchases of Two Packs "or More," which Included Carton Purchases**

As stated in the facts above, advertised discounts in February 2018, March 2018, and May 2018 applied once-per-transaction to any purchase of two packs or more – including a carton purchase. SOF ¶¶ 16–17. Accordingly, the advertisements were entirely truthful in that any purchase greater than a single pack (i.e., for two packs, three packs, four packs, up through a carton purchase) would receive a single $1 discount. Plaintiff's

purchase history, albeit from 2020, similarly demonstrates that Circle K's advertised discount provided a once-per-transaction $1 discount.  There is no evidence to contradict that these discounts were accurately applied.

To whatever extent the "Save $1 when you buy 2 packs" advertisements could be claimed to have been deceptive or misleading (they are not), the addition of "or more" in these specific advertisements nullifies any such claim of deception.  Indeed, Plaintiff's expert himself recognized analogously that "or more" for a JC Penney advertisement offering "$10 offer your purchase of $25 or more," meant "at least" and that a JC Penney customer would expect to save just $10 regardless whether they spent $25, $30, $50 "or more."  SOF ¶¶ 72–73.  So too here, the fair reading of these advertisements truthfully suggests that a customer will "Save $1 when [they] buy 2 packs *or more*," which they did.

These advertisements cannot – objectively – be considered false or misleading.  And Plaintiff has presented no evidence that they are – or that any customer was misled by these advertisements in particular.  At the very least, the Court should grant summary judgment in Circle K's favor against Plaintiff for any relief sought for purchases made when these "or more" advertisements were posted.

### C.   Advertisements Listing a Specific Per-Pack Price Cannot be Considered False or Misleading Because No Reasonable Consumer Would Objectively Believe the Advertisements Applied to a Carton Purchase

These advertisements cannot – objectively – be considered false or misleading because the advertisement listed a specific per-pack price that the customer should expect to pay for two-packs.  But a carton is a separately-coded item, and a rational consumer would not think a specific per-pack price on a pack purchase would transfer its internal discount to generate an additional $5 or $7.50 discount on top of an already discounted, separately priced carton purchase.

Instead, by explicitly listing the price to be paid, any reasonable consumer would only think that, if they purchased two packs, they would pay the listed price.  Just like a customer would similarly expect to pay the listed carton price (and could confirm that they

paid the price listed at the register, with the cashier, or on their receipt).

Furthermore, there does not exist a genuine dispute as to these advertised discounts because Plaintiff stated he did not see them (and thus did not rely on them), SOF ¶ 27, and Plaintiff has not produced any evidence that a single customer was misled by an advertisement listing a specific per-pack price into believing that a $5 or $7.50 discount applied on top of an already discounted and separately priced carton purchase.

These advertisements cannot – objectively – be considered false or misleading.  At the very least, the Court should grant summary judgment in Circle K's favor against Plaintiff for any relief sought for purchases made when advertisements stating a specific per-pack price were posted (e.g., ads placed in July 2018, November 2018, January 2019, May 2019, March 2019, December 2019, May 2020, July 2020).

### D.   Plaintiff Lacks Standing

####   1.   *Plaintiff has not identified a single purchase for which he suffered damages.*

Plaintiff lacks standing to bring his FAL and UCL claims because he has failed to identify a single purchase for which he suffered damages.  To establish standing to bring a claim under the FAL or UCL, plaintiffs must "show that they 'ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  *Hawkins v. Kroger Co.*, 906 F.3d 763, 768 (9th Cir. 2018) (citing Cal. Bus. & Prof. Code §§ 17204 (UCL); *id.* § 17535 (FAL)).  "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018).

When asked to identify "which carton purchases reflect damages [Plaintiff believed he] sustained," Plaintiff answered only "[t]he ones where they didn't give me the discount," without actually identifying a single applicable purchase.  SOF ¶ 64.  Plaintiff has still not identified a single purchase for which he claims he suffered damages.  Indeed, the only testimony with respect to his purchases was Plaintiff's admissions that he *did not* suffer damages.  SOF ¶ 65.

683257232

Accordingly, because Plaintiff has not presented evidence of even a single purchase for which he suffered damages (an economic injury), summary judgment should be granted in Circle K's favor for lack of standing alone.  *See Celotex*, 477 U.S. at 322 (stating summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial).

### E.   Plaintiff Cannot Establish Reliance Beyond His First Purchase

Even if there were some question of reliance and Plaintiff could establish standing for a carton purchase, Plaintiff cannot establish reliance for any subsequent carton purchase following the initial transaction during which he claims he was misled.  Accordingly, Circle K requests summary judgment be entered in its favor precluding Plaintiff from seeking damages for any secondary or subsequent purchase.

Plaintiff testified and confirmed that any supposed overpayment for cartons was readily apparent and easily discovered at the point of purchase.  SOF ¶ 37 (Pettersen Dep. at 55:7–9 (stating that Plaintiff generally purchased cartons with a $100 bill, and if his purchase came to $90, he "realized [he] didn't get the discount")); SOF ¶ 36 (Pettersen Dep. at 31:10–15 (acknowledging that he would be handed cash back at the register and could tell at the register whether he was given only $9 back)); SOF ¶ 40 (Pettersen Dep. at 31:18–21 (acknowledging that Plaintiff noticed at the register that he received only $9 back and made Circle K "sort it out")).  So it is not as if Plaintiff was unaware during – or immediately after – his purchase that he had purportedly overpaid.

Nevertheless, Plaintiff claims that, despite having purportedly been misled and having realized that he overpaid, he *continued* to make carton purchases as a result of Circle K's advertised 2-pack discount with Circle K repeatedly "[getting him] again."  SOF ¶ 35. But any reliance by Plaintiff on Circle K's two-pack advertisements – following his first purchase and after learning the advertised discount did not apply five-times to a carton purchase – would be objectively unreasonable.  *Cf. Davidson v. Kimberly-Clark Corp.*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

889 F.3d 956, 968 (9th Cir. 2018) (stating that "plaintiffs who are already aware of the deceptive nature of an advertisement are not likely to be misled into buying the relevant product in the future, and therefore are not capable of being harmed again in the same way").

Indeed, it is objectively unreasonable to believe that, contrary to the proverb "fool me twice, shame on me," and despite Plaintiff *knowing* the discount did not automatically apply five-times for a carton purchase for an additional $5 or $7.50 savings, Plaintiff was somehow "deceived" by Circle K twenty or more times to his detriment.  California's FAL and UCL statutes are not free-refund cards.  Plaintiff cannot simply continue making purchases purportedly relying on an advertised discount that he knows does not apply (or does not apply as he initially thought) and recover damages for every similar purchase he makes into the future.  This is particularly true here where Plaintiff testified that he could have easily requested a refund for his purchase but chose not to because, in his words, he didn't want to "quibble with them about ten bucks or $7.50 or whatever it was" and "I've got enough money, and I just didn't want to turn my car around."  SOF ¶ 41.

The Court should grant summary judgment in Circle K's favor precluding Plaintiff from seeking damages for any secondary purchase on the basis that "plaintiffs who are already aware of the deceptive nature of an advertisement are not [reasonably] likely to be misled."[3]  *Davidson*, 889 F.3d at 968.

## F.   Plaintiff Cannot Establish Reliance After December 4, 2020, When Plaintiff Filed His Complaint

For the same reasons that Plaintiff cannot establish reliance following his first purchase – in short, because at that point he knew the discount did not apply as he first thought – Plaintiff cannot establish reliance for any purchase after December 4, 2020, when Plaintiff filed his Complaint.  *Id.* (stating "plaintiffs who are already aware of the deceptive

---

[3] To the extent a class is certified, which Circle K contests, any class member's recovery should similarly be limited to a single purchase, as it is objectively unreasonable to make a second purchase in reliance on an advertised discount after learning that the advertised discount did not apply (or did not apply five-times in a carton purchase).

683257232

nature of an advertisement are not [reasonably] likely to be misled.").

Plaintiff instead asks the Court to (a) accept that he reasonably believed the advertisement applied after December 4, 2020 and (b) award him damages for purchases made after December 4, 2020 *after he filed his Complaint complaining that the advertisements were misleading*.

### G. Plaintiff Cannot Establish Reliance After December 29, 2020 (at-the-Latest) Because he Knew that the Discount did not Apply Five-Times per Transaction by That Time

Plaintiff testified in January 2022 that he learned "a couple years ago" that he should break his cigarette purchases into five separate two-pack purchases, negating any claim thereafter that he reasonably believed he should obtain a five-times discount when he purchased a carton. SOF ¶ 43. The backup transactional data, as well as Plaintiff's own credit card statement, shows five separate two-pack purchases by Plaintiff on December 29, 2020. SOF ¶ 52.

Because Plaintiff was aware, at the latest by December 29, 2020, that the discount did not apply five-times to a carton purchase but that he would have to separate his purchases into five separate two-pack purchases, Plaintiff cannot establish reliance – and thus cannot establish a claim for relief – for any purchase made after that time. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) (stating the plaintiff must allege and demonstrate they actually relied on the false advertising when they entered into the transaction); *cf. Davidson*, 889 F.3d at 968 (stating that "plaintiffs who are already aware of the deceptive nature of an advertisement are not likely to be misled").

The Court should grant summary judgment in Circle K's favor precluding Plaintiff from seeking damages for any purchase made after December 29, 2020 on the basis that he knew the discount applied once-per-transaction and that "plaintiffs who are already aware of the deceptive nature of an advertisement are not [reasonably] likely to be misled." *Davidson*, 889 F.3d at 968.

683257232

## V.    CONCLUSION

For these reasons, the Court should grant Circle K's motion for summary judgment. In the alternative to a complete grant of summary judgment in Circle K's favor, Circle K respectfully requests the Court grant partial summary judgment: (1) precluding any claim that "or more" advertisements were false or misleading; (2) precluding any claim that an advertisement listing a specific per-pack price was false or misleading; (3) precluding Plaintiff(s) from seeking recovery for subsequent purchases; and/or (4) precluding Plaintiff from seeking recovery for purchases made after December 4, 2020 or (5) after December 29, 2020.

DATED:  November 14, 2022          GREENBERG TRAURIG, LLP


By */s/ Tyler R. Andrews*
   Tyler R. Andrews
   Matthew P. Hoxsie (*pro hac vice*)
  Attorneys for Defendant,
  CIRCLE K STORES INC.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

683257232