1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

WILLIAM D. PETTERSEN, individually and on behalf of all others similarly situated,

                          Plaintiffs,

v.

CIRCLE K STORES, INC., an Arizona Corporation, and DOES 1-10,
                           Defendants.

Case No.:  3:21-cv-00237-RBM-BGS

**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**[Doc. 50]**

      On May 18, 2022, Plaintiff William D. Pettersen ("Plaintiff") filed a motion to certify class and for appointment of class counsel pursuant to Federal Rule of Procedure 23.[1]  (Doc. 50.)  On July 25, 2022, Defendant Circle K Stores, Inc. ("Circle K") filed its opposition to Plaintiff's motion for class certification.  (Doc. 59.)  On August 8, 2022,

---

[1] At the time he filed his motion for class certification, Plaintiff also filed a motion to file under seal: (1) portions of his memorandum of points and authorities in support of his class certification motion; and (2) Exhibits 19, 20, 32, and 39 to the Declaration of L. Timothy Fisher.  (Doc. 48; *see also* Doc. 49 (sealed lodged documents).)  The Honorable Marilyn L. Huff granted Plaintiff's motion to seal on March 23, 2022.  (Doc. 51.)  Accordingly, all citations below are to Document 49, the lodged copy of Plaintiff's memorandum of points and authorities.

Plaintiff filed a reply in support of his motion.  (Doc. 60.)  For the following reasons, the Court **GRANTS** Plaintiff's motion for class certification.

## I.   BACKGROUND

Plaintiff regularly purchased cigarettes at a Circle K owned and operated convenience store in San Diego County, California between December 2016 and December 2020.  (Doc. 59-1, Ex. H, Dep. of William Pettersen ("Pettersen Dep.") at 19:19–15.)  Plaintiff often purchased cigarettes in cartons, which generally contain 10 packs of cigarettes,[2] but he would also on occasion purchase a single pack or multiple packs instead of a carton.  (*Id*. at 21:8–24:7.)

Plaintiff testified that he regularly saw advertisements at Circle K that offered a discount on the total purchase price if a customer purchased two packs of cigarettes.  (*Id*. at 24:5–18.)  Plaintiff stated that he observed these advertisements at Circle K stores on the sales rack containing the cigarettes, on the front door of the store, and on a stand-alone sign near the front door of the store.  (*Id*. at 24:19–25:10.)  Some of these discounts were sponsored by tobacco manufacturers, while others were offered by Circle K through its Tobacco Club program.  (Doc. 49-1, Ex. 37, Dep. of Markeya Dale ("Dale Dep.") at 33:1–20, 78:14–79:13.)  Circle K has produced numerous advertisements showing various multi-pack discounts as part of class discovery.  (Doc. 49-1, Exs. 2–13.)  For example, Circle K used the following multi-pack advertisements:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2]  (Doc. 49-1, Ex. 37, Dep. of Markeya Dale at 25:11–26:4.)

2



(Doc. 49-1, Ex. 2; Dale Dep. at 26:24–28:6.)

(Doc. 49-1, Ex. 11; Dale Dep. at 77:22–78:13.)

The central issue in this case is whether Circle K's discount advertisements misled customers into believing that the multi-pack discount applied to purchases of cartons.  The parties appear to agree that multi-pack discounts were generally not offered on carton purchases.[3]  Plaintiff claims that Circle K's advertisements misled customers because they

[3]   Circle K informed Plaintiff that "[t]he 2-pack discount does not apply to carton purchases."  (Doc. 49-1, Ex. 29 at 8–9.)  Plaintiff testified that he did receive a "carton discount" on occasions when a Circle K employee applied the multi-pack discount by opening a carton and scanning each individual pack either independently or at Plaintiff's direction.  (Doc. 59-1, Ex. H, Dep. of William Pettersen at 28:2–29:20.)

did not explicitly exclude cartons from the discount offer.  Accordingly, Plaintiff asserts claims for violations of California's False Advertising Law ("FAL"), Cal. Bus & Prof. Code §§ 17500, *et seq.*[4] and California's Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code §§ 17200, *et seq*.  (Doc. 1-2.)  Plaintiff now moves for certification of the following class pursuant to Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(2) or (b)(3):

> All persons in California who purchased a carton of cigarettes from a Circle K store in California and did not receive an advertised multi-pack discount from December 4, 2016 to the present.

(Doc. 49 at 1.)  Plaintiff also requests the Court appoint Plaintiff as the class representative and appoint his counsel as class counsel.  (*Id*.)

## II.    LEGAL STANDARD

Plaintiff must provide facts sufficient to satisfy the four prerequisites of Rule 23(a), as well as one of the prongs of Rule 23(b).  *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Plaintiff must prove that his proposed class satisfies Rule 23 by a preponderance of the evidence.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (2022).  "The district court's Rule 23(a) and (b) analysis must be rigorous."  *In re Hyundai*, 926 F.3d at 556 (internal quotation omitted).  The Court's analysis may require some evaluation of the factual and legal issues comprising the Plaintiff's claims.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  Merits questions may be considered to the extent they are relevant to determining whether the Rule 23 prerequisites are satisfied.  *Id*.

/ / /

---

[4]  All subsequent statutory code citations are to the California Business and Professions Code unless otherwise noted.

### III.   DISCUSSION

**A.   Legal Standard**

Plaintiff must provide facts sufficient to satisfy the four prerequisites of Rule 23(a), as well as one of the prongs of Rule 23(b).  *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Plaintiff must prove that his proposed class satisfies Rule 23 by a preponderance of the evidence.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (2022).  "The district court's Rule 23(a) and (b) analysis must be rigorous."  *In re Hyundai*, 926 F.3d at 556 (internal quotation omitted).  The Court's analysis may require some evaluation of the factual and legal issues comprising the Plaintiff's claims.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).  But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  Merits questions may be considered to the extent they are relevant to determining whether the Rule 23 prerequisites are satisfied.  *Id.*

**B.   Numerosity**

The Court begins with the numerosity requirement of Rule 23(a)(1), which requires a proposed class to be "so numerous that joinder of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  "[I]mpracticability does not mean impossibility," rather the inquiry focuses on "the difficulty or inconvenience of joining all members of the class."  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (internal quotation marks and citations omitted).  "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."  *Alvarez v. NBTY, Inc.*, 331 F.R.D. 416, 421 (S.D. Cal. May 22, 2019).

Plaintiff asserts that numerosity is met here because Circle K's records show thousands of California consumers purchased cartons of cigarettes from Circle K.  (Doc. 49 at 7; Doc. 49-1, Ex. 39.)  Circle K does not dispute that it sold cartons of cigarettes to thousands of California consumers.  Rather, Circle K argues that Plaintiff fails to identify any other California consumers that claim to be misled by its advertisements.  (Doc. 59 at

5

10–11.)  Circle K contrasts this case with *Veera v. Banana Republic, LLC*, 211 Cal. Rptr. 3d 769 (Cal. Ct. App. Dec. 15, 2016), in which multiple plaintiffs claimed to be misled by the defendant's advertisements.  Circle K's argument errantly expands the numerosity argument.  There is no requirement that more than one named plaintiff be present to represent a putative class.  Plaintiff has demonstrated that the putative class is so numerous that joinder would be impractical; accordingly, Plaintiff has satisfied the requirement of Rule 23(a)(1).

## C.   Typicality

Under the typicality requirement, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class[.]"  FED. R. CIV. P. 23(a)(3). This tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts, Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff's claims meet the typicality requirement.  Plaintiff alleges he and the putative class members were injured by the same unlawful conduct: misrepresentations that cartons of cigarettes would be sold at a discounted price.  Circle K contends that Plaintiff's unique purchasing experiences preclude typicality with putative class members. (Doc. 59 at 14–15.)  Circle K alleges that these variations include: (i) Plaintiff did not see any advertisements that listed a specific per pack price; (ii) Plaintiff did not recall entering his phone number to receive a discount; (iii) Plaintiff could not recall whether his purchases were processed as purchases of multiple packs of cigarettes or as one carton; and (iv) Plaintiff claims that he sometimes received the multipack discount on cartons.  (*Id*.)  These variations do not defeat typicality.  Rule 23 "does not require the named plaintiffs to be identically situated with all other class members.  It is enough if their situations share a

6

common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).  Minor variations in the fact patterns underlying class members' claims do not defeat typicality where the plaintiff has otherwise shown that he has suffered the same or similar injury as those he seeks to represent.  *See Spencer v. Beavex, Inc.*, No. 05-CV-1501WQH(WMC), 2006 WL 6500597, at *11 (S.D. Cal. Dec. 15, 2006) (citing *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)).

**D.   Adequacy**

Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  To determine adequacy, courts evaluate whether the named plaintiffs and their counsel "have any conflicts of interest with other class members" and whether they will "prosecute the action vigorously on behalf of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

The Court finds no apparent conflicts of interest between Plaintiff, his counsel, and the proposed class members.  Plaintiff and his counsel have demonstrated that they will prosecute this action vigorously on the class's behalf.  Plaintiff has continued to participate in this action since its inception, including by sitting for a deposition and by responding to Circle K's discovery.  (*See* Doc. 49 at 17.)  Similarly, Plaintiff's counsel has diligently litigated this case, including by filing this motion and timely responding to various motions filed by Circle K.  Counsel has also taken depositions and conducted discovery.  Finally, counsel appears to have broad experience litigating class actions.  (*See* Docs. 50-2, Exs. 40, 41; 50-3.)  Circle K does not dispute that Plaintiff and his counsel will fairly and adequately represent the class.  Accordingly, the Court finds that adequacy is satisfied here.

**E.   Commonality and Predominance**

The Court will consider the commonality prerequisite of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) together.  *See*, *e.g.*, *Lemp v. Seterus, Inc.*, No. 2:18-cv-01313-TLN-KJN, 2022 WL 912960, at *2 (E.D. Cal. Mar. 29, 2022).  The commonality prerequisite of Rule 23(a)(1) requires that there be "questions of law or fact

common to the class." FED. R. CIV. P. 23(a)(1).  "Commonality requires . . . that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349–50 (citation omitted). Plaintiff's claims must rest on a common contention that is capable of classwide resolution "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.  Commonality is about the ability of the class certification process to "generate common answers apt to drive the resolution of the litigation." *Id*. at 350 (citation and emphasis omitted).

The predominance inquiry of Rule 23(b)(3) "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted).  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id*. (citation omitted).   The Court's predominance analysis begins with the elements of Plaintiff's underlying causes of action.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Plaintiff brings both FAL and UCL claims.  "The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair, or fraudulent business act or practice.'" *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 844 (Cal. 2011) (quoting CAL. BUS. & PROF. CODE § 17200).   The UCL also prohibits any "unfair, deceptive, untrue or misleading advertising and any act prohibited by the FAL'." *Veera*, 211 Cal. Rptr. 3d at 775 (citation omitted).  The FAL "generally prohibits advertising that contains 'any statement . . . which is untrue or misleading, and which is known, or . . . should be known, to be untrue or misleading.'" *Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 871 (Cal. Ct. App. Oct. 4, 2013) (quoting CAL. BUS. & PROF. CODE § 17500).

"To state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the

public are likely to be deceived." *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009) ("*Tobacco II*") (cleaned up).  "This standard encompasses not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *In re: First Am. Home Buyers Protection Corp. Class Action Litig.*, 313 F.R.D. 578, 607 (S.D. Cal. Feb. 22, 2016) (internal quotation omitted).

These claims are evaluated on an objective reasonable consumer test.  An objective reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is 'the ordinary consumer within the target population.'" *Chapman*, 162 Cal. Rptr. 3d at 871–72 (quoting *Lavie v. Proctor & Gamble Co.*, 129 Cal. Rptr. 2d 486, 497 (Cal. Ct. App. Jan. 17, 2003)).  "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be understood by some few consumers viewing it in an unreasonable manner.  Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 129 Cal. Rptr. 2d at 495.  "The remedies available to a private plaintiff under the UCL and the false advertising law include injunctive relief and restitution." *Chapman*, 162 Cal. Rptr. 3d at 871 (citations omitted).

Plaintiff contends that this case presents three common questions of law or fact that "will drive the resolution of this litigation: (1) whether Circle K's advertised discounts apply to the purchase of a carton of cigarettes; (2) whether Circle K provided discounts to carton purchasers; and (3) what is the total amount of money owed to carton purchasers who did not receive the advertised multi-pack discounts."  (Doc. 49 at 8.)  In contrast, Circle K contends that Plaintiff fails to demonstrate that his claims meet the requirements of commonality and predominance.  (Doc. 59 at 11–13, 18–24.)

The Court agrees with Plaintiff.  For the reasons discussed below, the Court concludes that Plaintiff's claims present common questions of law and fact that are susceptible to resolution on a class-wide basis and that these common questions are not

outweighed by the number of individual issues.  Predominant questions make up "a significant aspect of the case" and clearly justify "handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (*overruled on other grounds by Dukes*, 564 U.S. at 338).

### 1. Variations in Advertisements and Discount Programs

Circle K contends Plaintiff's purported common questions fail the predominance test because there are too many individual variations in Circle K's advertisements and discount programs for class resolution to be appropriate. (Doc. 59 at 17–18.)  The Court begins with the advertisements.  Some advertisements were available only to customers who joined Circle K's Tobacco Club program; others were not. (Doc. 59-1, Ex. F, at DEF000016, 44.)  Likewise, some required the use of a phone application and others did not. (*Id*. at DEF000017, 24.)  The advertisements displayed discounts in different ways, for example: (i) a specific discount amount on the cigarettes purchased; (ii) a generalized offer of savings while purchasing multiple items ("Buy 2 packs and save"); and (iii) a specific per-pack price that a customer would expect to pay. (*Id*. at DEF000013, 17, 27.)  Circle K asserts that no single advertisement was posted during the entire class period. (Doc. 59 at 13.)  Thus, according to Circle K, these variations create too many individual questions for Plaintiff's claim to resolved on a class-wide basis. (*Id*. at 12–13.)

Similarly, Circle K argues that the variations in its discount programs create too many individual issues for class-wide resolution. (*Id*.)  Circle K's discount programs ran for different durations, they used different funding sources (manufacturer discounts vs. Circle K discounts), and they were occasionally combined to determine the final customer price. (*Id*.)  Circle K also claims that some manufacturer-funded discounts were "generally . . . passed through to carton purchases." (*Id*.)  Circle K contends that these variations necessitate individual analysis of each advertisement and discount program. (*Id*.)

The Court disagrees that these variations defeat commonality or prohibit a showing of predominance.  The variations in advertisements and the discount programs are not material to the central issue of whether purchasers of cartons received the multi-pack

discount that was advertised.  Circle K has produced numerous advertisements that show commonality among Circle K's discount programs: multi-pack purchases receive discounted prices.  (*See*, *e.g.*, Doc. 59-1, Ex. F, at DEF000002–29.)  Thus, "[p]laintiff's claims here arise out of the allegedly false statement, worded in several variations, made on every [advertisement] and therefore arise from the same facts and legal theory." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. June 18, 2020).  Other courts have similarly concluded that variations in labeling do not defeat commonality.  *See Ries v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 538–39 (N.D. Cal. Nov. 27, 2012); *In re Juul Labs, Inc. Marketing Sales Practices & Products Liability Litig.*, Case No. 19-md-02913-WHO, 2022 WL 2343268, at \*1 (N.D. Cal. June 28, 2022).

　　2.  Reliance[5]

Circle K argues that Plaintiff cannot demonstrate reliance in accordance with the requirements of Rule 23.  A plaintiff must show reliance or a causal connection between the alleged misrepresentation and the injury to bring UCL and FAL claims.  *Veera*, 211 Cal. Rptr. 3d at 776, 779; *Tobacco II*, 207 P.3d at 39; *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 684–85 (N.D. Cal. Feb. 26, 2021).  "[N]amed plaintiffs, but not absent ones, must show proof of 'actual reliance' at the certification stage." *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020) (citing *Tobacco II*, 207 P.3d at 38).

---

[5]  Numerous courts have considered the question of whether a plaintiff has pled or proven actual reliance on a dispositive motion.  Given Proposition 64's requirement that a plaintiff must show reliance to have standing to bring a UCL claim, courts often analyze the reliance question as an issue of standing.  For that reason, it may be procedurally more appropriate for Circle K's arguments to be raised as a challenge to standing in a motion to dismiss or on a motion for summary judgment rather than in an opposition to a motion for class certification.  However, the Court is mindful of the Ninth Circuit's instruction that "named plaintiffs, but not absent ones, must show proof of 'actual reliance' at the certification stage." *Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020).  Accordingly, the Court addresses whether plaintiff has shown sufficient proof of actual reliance at the certification stage.

1   "Reliance is proved by showing that the defendant's misrepresentation . . . was an

2   immediate cause of the plaintiff's injury-producing conduct." *Tobacco II*, 207 P.3d at 39

3   (citation omitted).   "While a plaintiff must show that the misrepresentation was an

4   immediate cause of the injury-producing conduct, the plaintiff need not demonstrate it was

5   the only cause[;] . . . [i]t is enough that the representation has played a substantial part, and

6   so had been a substantial factor, in influencing his decision." *Id.* (citation omitted).

7   Circle K's arguments fall into two main categories: (i) Plaintiff cannot show actual

8   reliance at the certification stage; and (ii) expert testimony shows that reliance and

9   materiality cannot be resolved according to the requirements of Rule 23.   The Court begins

10   with the first set of arguments.

11   *a. Plaintiff's Proof of Actual Reliance*

12   First, Circle K argues that Plaintiff cannot show actual reliance because he does not

13   recall seeing certain advertisements at issue.  (Doc. 59 at 21.)  Likewise, Circle K asserts

14   that if Plaintiff cannot recall seeing the advertisements, then other class members will

15   likewise fail to remember.  (*Id.*)  Circle K contends that even if class members could

16   remember, the Court must inquire into each class member's reliance, and therefore,

17   predominance cannot be demonstrated.  (*Id.* at 21-22.)

18   The Court disagrees.  The California Supreme Court has held that a plaintiff does

19   not "need to demonstrate individualized reliance on specific misrepresentations to satisfy

20   the reliance requirement." *Tobacco II*, 207 P.3d at 40.  In *Tobacco II*, the California

21   Supreme Court adopted the reasoning from two California Court of Appeals decisions in

22   which the plaintiffs could not recall specific advertisements on which they relied, but the

23   Courts of Appeals nonetheless concluded that they relied on the defendants' false

24   statements.  *Id.*  "[W]here, as here, a plaintiff alleges exposure to a long-term advertising

25   campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that

26   the plaintiff relied on particular advertisements or statements." *Id.*

27   In this case, Plaintiff testified to the general contents of the advertisements he saw

28   (Pettersen Dep. at 23:6–11, 23:24–24:18), the locations of the advertisements (*id.* at 24:19–

12

25:21), and the presence of the advertisements (*id.* at 26:9–17).  This is not a case in which the plaintiffs fail to allege that they saw the allegedly misleading advertisements.  *See Laster v. T-Mobile USA*, 407 F. Supp. 2d 1181, 1194 (C.D. Cal. Nov. 30, 2005); *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913–14 (N.D. Cal. March 27, 2020).  Further, the Court does not have to inquire into each absent class member's reliance for purposes of class certification.  *Tobacco II*, 207 P.3d at 38; *Walker*, 953 F.3d at 630–31 (there is a "conclusive presumption" of reliance in UCL cases that "serves to relieve UCL plaintiffs of their obligation to establish absent class members' reliance").

Next, Circle K argues that Plaintiff cannot show reliance because he had a practice of purchasing cigarettes at Circle K regardless of whether a discount existed.  (Doc. 59 at 21–22.)  Plaintiff testified that he would purchase a carton of cigarettes at Circle K even when the discount was not offered.  (Pettersen Dep. at 26:2–27:5.)  However, Plaintiff also testified that before purchasing an undiscounted carton at Circle K, he would go to a nearby 7-Eleven to determine if that store offered a discount; if neither store offered a discount, he would purchase the undiscounted carton at Circle K.  (*Id.*)

Circle K asserts that Plaintiff's purchase decisions show that the advertisements were not material misrepresentations because they did not change Plaintiff's purchasing behavior.  Circle K contends that numerous courts found plaintiffs in similar situations to have failed to demonstrate reliance.  (Doc. 59 at 21.)  The Court disagrees.  Circle K's supporting cases are factually distinct from this case.  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946–49 (S.D. Cal. Mar. 21, 2007) (plaintiff failed to plead reliance when she bought the product at issue eleven days before filing suit and that she relied on the false advertising when making the purchase); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1209–11 (N.D. Cal. May 26, 2017) (plaintiffs failed to demonstrate reliance on product's health-related statements where plaintiffs purchased the product numerous times prior to the health-related statements appearing on the product and plaintiffs testified to purchasing the product because of taste and affinity for brand and packaging); *Major v. Ocean Spray Cranberries, Inc.*, Case No. 5:12-cv-03067-EJD, 2015 WL 859491, at *3

13

(N.D. Cal. Feb. 26, 2015) (plaintiff did not rely on product's claim that it was a low-calorie product where plaintiff testified that she did not purchase the product for that reason); *Williams*, 449 F. Supp. 3d at 913–14 (no reliance where plaintiff did not read the allegedly false representation).  In contrast, Plaintiff testified Circle K's discount had an impact on his purchasing decisions.  If the discount was not available, he would go to a nearby 7-Eleven—one of Circle K's competitors—in search of a discount. (Pettersen Dep. at 26:21–27:7.)  Plaintiff's testimony indicates that on some occasions, he purchased cigarettes at Circle K rather than 7-Eleven because of the advertised discounts.

Circle K contends Plaintiff cannot show reliance because he testified that he purchased cigarettes from Circle K even without the discount "[b]ecause it was . . . in great part [his] habit; in great part it was very convenient to stop there, going to and from home; and, generally speaking, well, they had the best cigarette prices." (Pettersen Dep. at 98:11–24.)  California case law is clear that reliance does not require that the allegedly misleading statement be the "sole or even the predominant or decisive factor influencing his conduct[,]" rather the misrepresentation must have played a substantial part in influencing his decision. *Tobacco II*, 207 P.3d at 39.  Or stated differently, "a plaintiff may show actual reliance by alleging that 'had the omitted information been disclosed one would have been aware of it and behaved differently.'" *Williams*, 449 F. Supp. 3d at 912–13 (quoting *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993)).  Even though Plaintiff had other non-discount reasons for his preference of purchasing cigarettes at Circle K, he testified that when a discount was not offered, he would attempt to purchase discounted cigarettes at Circle K's competitor.  This behavior indicates that if Circle K had disclosed that the cartons were ineligible for the discount, then Plaintiff "would have been aware of it and behaved differently." *Id*.

### b. Materiality

Plaintiff and Circle K disagree as to whether Plaintiff has met his burden to show materiality at the class certification stage.  "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material."

14

*Tobacco II*, 207 P.3d at 39 (citation omitted).  "A representation is material . . . if a reasonable consumer would attach importance to it or if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (internal quotations and emphasis omitted).  Further, a plaintiff does not need to demonstrate "individualized reliance on specific misrepresentations to satisfy the reliance requirement." *Id.* at 40.  Rather, "[q]uestions of materiality and reliance are determined based upon the reasonable consumer standards, not the subjective understandings of individual plaintiffs." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 224 (N.D. Cal. July 30, 2015) (citation omitted).

Plaintiff contends that materiality "need not be proven at class certification; instead, Plaintiff needs to show only that a 'common question of materiality and reliance' exists." (Doc. 49 at 13.)  This view is supported by the district court's opinion in *Testone v. Barlean's Organic Oils, LLC*, Case No.: 19-CV-169 JLS (BGS), 2021 WL 4438391, at *14 (S.D. Cal. Sept. 28, 2021), which states that "the Court finds more persuasive those cases requiring proof only of a common question of materiality and reliance rather than proof of those issues on the merits at the class certification stage."  *See also Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1117 (N.D. Cal. Aug. 17, 2018) (materiality is a "common question" for purposes of Rule 23(b)(3) that can be resolved on a class-wide basis and defendant raise a merits dispute as to materiality that does not defeat class certification).

Circle K does not explicitly take the position that materiality needs to be proven at the class certification stage, but many of Circle K's arguments depend on that view.  For example, Circle K critiques Plaintiff's expert, Larry Londre, for failing to produce any data regarding how consumers interpret the advertisements at issue.  (Doc. 59 at 22.)  Circle K contends that Mr. Londre's report falls short because he did not conduct a consumer survey or speak to Circle K customers about the advertisements.  (*Id.* at 23.)  Circle K also suggests that Mr. Londre's testimony undermines Plaintiff's argument for materiality because Mr.

Londre conceded that some customers do not rely on advertisements and that some customers will make purchases regardless of price.  (Doc. 59-1, Ex. A, Dep. of Larry Londre at 64:13–20, 78:8–10.)

Some courts have found a plaintiff's motion for class certification to be deficient where the plaintiff's expert did not conduct a consumer survey.  *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1044–48 (C.D. Cal. Mar. 20, 2018) (court held that the expert report "does not provide insight into consumers' purchasing decision" and denied class certification for lack of commonality); *In re 5-Hour Energy Marketing & Sales Practices Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) ("[a]bsent a consumer survey or other market research to indicate how consumers reacted to [the product's statements], and how they valued these statements . . . , [p]laintiffs have not offered sufficient evidence of materiality across the class" and finding that plaintiffs failed to establish predominance); *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217, 230 (N.D. Cal. July 30, 2015) (expert's "fill-in-the-blanks" declaration that did not include a customer survey was insufficient to "establish that the materiality of the label statements here is a common question").  These opinions are based, at least in part, on the proposition that a plaintiff must "put forth at least some evidence that the challenged statements were material, and that members of the public were likely to be deceived by these statements."  *Shanks v. Jarrow Formulas, Inc.*, No. CV 18-09437 PA (AFMx), 2019 WL 4398506, at *5 (C.D. Cal. Aug. 27, 2019).

In contrast, this Court is persuaded by the reasoning of *Testone* and thus, the Court only considers a showing of a predominate, common question of materiality and reliance to be required by Rule 23.  2021 WL 4438391, at *14.  In *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 459 (2013), the Supreme Court instructed that Rule 23(b)(3) requires a showing that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."  Further, the Supreme Court noted that when materiality is judged on an objective standard, it is a common question for purposes of Rule 23(b)(3).  *Id.*

Circle K's critiques of Mr. Londre's testimony and expert report are about proof of materiality rather than the proper inquiry, i.e., whether materiality is a question fit for class-wide resolution that predominates over individual issues.[6]   The Court concludes that the question of materiality, and by extension, the question of reliance, satisfies the requirements of commonality and predominance.   Since materiality is judged on a reasonable consumer standard, there are various methods that plaintiff may use to "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation and emphasis omitted).   This may include the use of consumer surveys, expert testimony, Circle K's Rule 30(b)(6) testimony, and Circle K's internal documents. *Testone*, 2021 WL 4438391, at *14; *Hadley*, 324 F. Supp. 3d at 1115; *see Shanks*, 2019 WL 4398506, at *6.   The Court holds that the materiality of the alleged misrepresentations is a question susceptible to class-wide resolution that meets the requirements of Rule 23(a)(2).   Given that materiality is judged on an objective reasonable consumer standard, "the issue is susceptible to generalized, class-wide proof." *Tysons Foods*, 577 U.S. at 453 (citation omitted).   Plaintiff has also established predominance as it relates to the materiality inquiry as the common, aggregation-enabling issues are more prevalent in this case than any aggregation-defeating, individual issues. *Id.*

3. <u>Damages</u>

Circle K argues that Plaintiff fails to show that "damages are capable of measurement on a classwide basis" as required by Rule 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).   The Ninth Circuit has interpreted the Supreme Court's holding in *Comcast* to mean that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline*

---

[6] In its opposition, Circle K argues that "while [Mr. Londre's] report and testimony should be rejected under FRE 702, they nevertheless confirm[] that it is simply impossible to determine materiality or reliance on a classwide basis in this case." (Doc. 59 at 29.)   To the extent Circle K intended the Court to construe this statement as a motion to strike, for the reasons discussed above, such request is denied.

*Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  "Uncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019) (citations omitted). "Class wide damages calculations under the UCL [and] FAL . . . are particularly forgiving." *Id*. at 1183.  "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Id*. (internal quotation omitted).

Plaintiff contends that "damages can be easily calculated from Circle K's own business records." (Doc. 49 at 17.)  Plaintiff argues that Circle K can use its records to identify the number of cartons of cigarettes it sold during the class period in California and identify which discounts and promotions were offered during the class period. (*Id*.)  These claims are supported by the record before the Court. (Dale Dep. at 172:10–22; *see* Doc. 59-1, Ex. F.)  Plaintiff argues that he can easily calculate the restitution damages he seeks by multiplying the number of cartons sold by the discount amount offered. (Doc. 60 at 5–6.) The Court considers this proposed methodology to be sufficient at the class certification stage, as have other courts who have considered similar proposed methodologies. *See*, *e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670–71 (C.D. Cal. Aug. 1, 2014) (citation omitted).  In opposition, Circle K primarily points to Plaintiff's testimony about his calculations of his individual damages. (Doc. 59 at 18–20.)  Circle K argues that the Court will need to engage in a similarly detailed examination for each class member.   But Plaintiff's method of calculating his own damages is much different than what he suggests for the measurement of class-wide damages.  The Court is assured that Plaintiff will engage in the methodology he proposes rather than follow his personal method of estimating his damages that he employed at the beginning of this suit.  In sum, Plaintiff's proposed method for calculating class-wide damages meets the requirements of Rule 23(b)(3).

/ / /

18

**F.      Superiority**

Rule 23(b)(3) requires the court find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3). This factor "encompasses the whole range of practical problems that may render the class format inappropriate for a particular suit."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

Plaintiff contends, and the Court agrees, that class treatment is superior to an individual treatment of Plaintiff's claims.  Because "each class member's claim for restitution involves a small sum of money, . . . the litigation costs would render individual prosecution of claims prohibitive."  *Allen*, 300 F.R.D. at 671; see also *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotation and alteration omitted) ("[c]lass actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.").

In its opposition, Circle K argues that "[w]hether considered as a matter of class 'ascertainability' or Rule 23(b)(3)'s requirement that a class action be superior to individual suit, the variations noted above render management of a class action in this case essentially impossible."  (Doc. 59 at 20.)  "Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed."  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (citations omitted).  "A class definition should be precise, objective and presently ascertainable," such that it is "administratively feasible to determine whether a particular person is a class member."  *Id.* Circle K's ascertainability arguments, however, stem from (i) variations in Circle K's advertisements and (ii) Plaintiff's deposition testimony regarding his memory of specific purchases.  (Doc. 59 at 21–23.)  The Court has already considered—and rejected—these arguments above, in finding Plaintiff satisfied the commonality prerequisite of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3).  None of the ascertainability

arguments identified by Circle K reverse the Court's finding that class treatment of Plaintiff's claims is superior as required by Rule 23(b)(3).

**G.    Rule 23(b)(2) Requirements**

In addition to class certification under Rule 23(b)(3), Plaintiff also requests class certification under Rule 23(b)(2).  Rule 23(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  FED. R. CIV. PRO. 23(b)(2).  "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (quoting *Zinser v. Accufix Res. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001)).  As the Supreme Court explained in *Dukes*, class certification under Rule 23(b)(2) is not authorized when each individual class member would be entitled to a different injunction or when each class member would be entitled to an individualized award of monetary damages.  564 U.S. at 360–61.

The Court finds Plaintiff's claims cannot be certified under Rule 23(b)(2) because the primary relief sought by Plaintiff is monetary relief, not injunctive relief.  *See Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 972 (S.D. Cal. 2016).  Although Plaintiff argues "injunctive relief is appropriate" because it "would ensure class members are protected in the future," Doc. 49 at 26, "it is clear from the pleadings . . . that the central focus of this suit is monetary relief."  *Lucas*, 212 F. Supp. 3d at 972; *see also* Doc. 1-2 (Compl.) (seeking only "monetary and actual damages and/or restitution, as appropriate" and "costs, including experts' fees and attorneys' fees, expenses and costs of prosecuting this action" as opposed to injunctive relief).  Indeed, the parties argued at length the merits of Plaintiff's damages model in their class certification briefing, and Plaintiff testified at his deposition that he believed his individual damages to be around $200.  (Pettersen Dep. at 96:19–97:8; *see also* Doc. 59-1, Ex. J, Plaintiff's Initial Disclosures, at 293 (estimating Plaintiff's out-of-pocket losses at $200 and stating "Plaintiff seeks restitution and disgorgement of all monies

acquired by Defendant as a result of its failure to apply advertised discounts to cigarette cartons").

## IV.   CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for class certification (Doc. 50). The Court certifies the following class pursuant to Federal Rule of Civil Procedure 23(b)(3):

> All persons in California who purchased a carton of cigarettes from a Circle K store in California and did not receive an advertised multi-pack discount from December 4, 2016 to the present.

The Court concludes that Plaintiff William D. Pettersen meets the requirements of class representative for this class.  The Court also concludes that Lawrence Timothy Fisher and Sean L. Litteral of Bursor & Fisher, P.A., Stephen B. Morris of The Law Offices of Stephen B. Morris, and Peggy J. Reali of Reali Law, A.P.C. are adequate counsel for this class.

**IT IS SO ORDERED.**

DATE:  November 23, 2022

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE