1
2
3
4
5

GREENBERG TRAURIG, LLP
Tyler R. Andrews (SBN 250686)
andrewst@gtlaw.com
8565 Jamboree Road, Suite 500
Irvine, CA  92612-4410
Telephone: (949) 732-6500
Facsimile: (949) 732-6501

6
7
8
9
10

GREENBERG TRAURIG, LLP
Matthew P. Hoxsie (Admitted *pro hac vice*)
hoxsiem@gtlaw.com
2375 E. Camelback Rd., Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8471

11
12

Attorneys for Defendant,
CIRCLE K STORES INC.

13
14
15

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

16
17
18
19
20
21
22
23
24
25

| | |
|---|---|
| WILLIAM D. PETTERSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>v.<br><br>CIRCLE K STORES INC., an Arizona Corporation, and DOES 1-10,<br><br>                Defendant. | CASE NO. 3:21-cv-237-RBM-BGS<br><br>[Assigned to Hon. Ruth Bermudez Montenegro and Magistrate Judge Bernard G. Skomal]<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>ORAL ARGUMENT REQUESTED<br><br>DATE: February 27, 2023[1]<br>COURTROOM: 5B [5th Floor]<br>JUDGE: Hon. Ruth Bermudez Montenegro |

26
27
28

---

[1]  The Parties will submit a joint statement of undisputed and disputed facts ten (10) days prior to the hearing date.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................1

II.  PLAINTIFF HAS NOT IDENTIFIED ANY RECOVERABLE DAMAGES.........2

III. THE ADVERTISEMENTS WERE NOT MISLEADING ......................................4

    A.   Plaintiff Has Not Established a Genuine Dispute that Circle K's "Save $1 When You Buy 2 Packs" Ads were Misleading to Carton Purchasers...........................................................4

    B.   The 2018 "or more" Advertisements Are Not False or Misleading ..............6

    C.   Advertisements Listing a Specific Per Pack Price are Not Misleading..........7

IV.  PLAINTIFF HAS NOT ESTABLISHED A PRESUMPTION OF RELIANCE.................................................................8

V.   PLAINTIFF'S SUBSEQUENT PURCHASES WERE NOT OBJECTIVELY REASONABLE ...............................................9

VI.  CONCLUSION.............................................................10

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Apple Inc. v. Amazon.com Inc.*,
  915 F. Supp. 2d 1084 (N.D. Cal. 2013) ........................................................... 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................... 6

*Chavez v. Citizens for a Fair Farm Labor Law*,
  84 Cal.App.3d 77 (1978) ................................................................................ 10

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ......................................................................... 10

*Ely Holdings Ltd. v. O'Keeffe's, Inc.*,
  No. 18-cv-06721-JCS, 2021 WL 390946 (N.D. Cal. Feb. 3, 2021) ................. 7

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................... 3

*Hansen v. Newegg.com Americas, Inc.*,
  25 Cal.App.5th 714 (2018) ............................................................................... 3

*Haskell v. Time, Inc.*,
  965 F. Supp. 1398 (E.D. Cal. 1997) ................................................................. 5

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) .................................................................................... 8

*Lavie v. Proctor & Gamble Co.*,
  105 Cal.App.4th 496 (2003) ............................................................................. 9

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 1982) ............................................................................ 8

*Quicken Mortg. Corp. v. Bank of Am.*,
  No. G059249, 2022 WL 189816 (Cal. Ct. App. Jan. 21, 2022) ..................... 10

# I.   INTRODUCTION

Rather than salvaging Plaintiff's case, Plaintiff's Opposition only serves to demonstrate why no genuine issues of fact exist to prevent summary judgment in Circle K's favor.  From its outset, Plaintiff's theory of liability has lacked both evidentiary proof and plain common sense.  Plaintiff's Complaint was premised on the claim that Circle K offered a 2-pack discount on cigarettes that should have provided a savings of either $5.00 or $7.50 per carton sold, but that "no discount" was applied to Plaintiff's carton purchases unless specifically requested.  Compl. ¶ 7.  The actual record here – even the evidence attached to Plaintiff's Opposition – tells a dramatically different story.

Circle K's discovery responses make clear that Circle K *has never even offered* the discount alleged in the Complaint.  Indeed, Circle K has *never* sold a carton in California to which a $5 or $7.50 discount applied.  *See, e.g.*, Response to RFP No. 6.  Plaintiff has not challenged Circle K's verified discovery responses or corresponding data on this point.

Instead of the non-existent "carton" discount alleged in the Complaint, Circle K actually advertised and offered a "multi-**pack**" discount that applied once-per-transaction to any purchase of two packs *or more*, e.g., to a single purchase of three packs, nine packs, or a carton of ten.  S*ee* ECF No. 84-1, Ex. 42 to the Fisher Decl., Response to Interrogatory No. 6.  Moreover, these "multi-pack" discounts were only offered at specified times (and in some years only in 16 of 52 weeks).  *Id.*  When in effect, the discounts undisputedly applied to *all* applicable carton sales – so long as the customer purchased a carton of a non-excluded cigarette variety and entered their phone number to confirm their tobacco club loyalty status.  Plaintiff undisputedly received these discounts.

Plaintiff provides one of the clearest explanations for why this case is baseless.  Plaintiff testified and admitted that he learned "years ago" that he could break up his purchase of a carton into five *separate* two-pack transactions to maximize the advertised once-per-transaction discount.  But when Plaintiff did this he was undisputedly purchasing *"packs," not "cartons."*  SOF ¶¶ 44, 47.  Plaintiff wants this Court to render the distinction meaningless because in his view there was no "distinction between [cartons and packs] in

my mind." *See* SOF ¶¶ 55-58; Pettersen Dep. at 64:22-65:2.  The Court should not do so.

In short, Plaintiff's Opposition makes clear that his true gripe with Circle K is not its ads or whether they were misleading, but simply that he had to break his cartons into five separate purchases to get around the once-per-transaction limit of the discount, and he sometimes forgot to do so or felt inconvenienced.  But inconvenience or forgetfulness does not support a valid false advertising claim.  In actuality, Plaintiff received every applicable discount under the plain language of the advertisements.  And tellingly, ***Plaintiff has produced no evidence that <u>any</u> person in California – <u>including Plaintiff</u> – failed to receive a single Circle K discount they were entitled to***.

## II.   PLAINTIFF HAS NOT IDENTIFIED ANY RECOVERABLE DAMAGES

Plaintiff's Opposition fails to refute the fact that despite sixteen months of discovery and extensive depositions, experts, and motion practice, he has yet to identify a single purchase for which he was not provided an applicable discount from Circle K.  In an attempt to refute this dispositive fact, Plaintiff first attempts to argue that his carton purchases on "December 29, 2020 and January 5, 2021" evidence that Circle K does apply a $5 or $7.50 discount to cartons.  Opposition at 14, 16.  Plaintiff is demonstrably incorrect.  Indeed, the data clearly shows that Plaintiff purchased "packs," not cartons, on the dates in question.  SOF ¶¶ 44, 47.  In fact, the Opposition itself admits that the cashier "opened the carton and applied the Marlboro Club discount and the Tobacco Club discount for each of the carton's five 2-packs, in five transactions."  *Id.*  Plaintiff's threshold allegation that he bought a "carton" to which a $5 or $7.50 two-pack discount should have applied is false.

With discovery completed, it is now apparent that the entire premise of Plaintiff's case (and with the class as currently defined) is unsupportable.  Rather than not receiving an advertised discount from Circle K, Plaintiff's only conceivable claim is that Circle K should have applied the multi-pack discount five times on a carton purchase rather than once.  *See* Opposition at 15.  Yet Plaintiff's Complaint never alleges – nor has Plaintiff ever pursued – this far narrower theory.  Nor does this narrower theory comply with the class definition certified by the Court: *i.e.*, persons who purchased a carton but did not

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

receive an advertised discount when they should have.[2]  In essence, Plaintiff now argues that he received only a "*partial* discount" when his Complaint (and the basis for class certification) alleged that "***no discount***" applied to cartons unless requested.  Compl. ¶ 7.

Plaintiff next alleges that he was deprived of an applicable discount on July 1, 2020. Opposition at 15.    Plaintiff is again incorrect.    Circle K's purchase data clearly demonstrates that Plaintiff's July 1 purchase did not include the "ALTRIA LOYALTY CPN" tag, meaning that Plaintiff did not enter his number to confirm his club loyalty status, as required, and thus was not entitled to any discount.  Plaintiff has not refuted this data, nor can he.   Indeed, the data shows numerous purchases for which the "ALTRIA LOYALTY CPN" discount *was* provided to Plaintiff when he entered his number.  This data also comports with Plaintiff's sworn testimony that he voluntarily *stopped entering* his number after a few months because he considered it "just an idle act … so I didn't bother."  SOF ¶ 62.  Further still, Plaintiff's Opposition fails to link his July 1 carton purchase to any Circle K advertisement actually posted at the time.  *See Hansen v. Newegg.com Americas, Inc.*, 25 Cal.App.5th 714, 731 (2018) (requiring the plaintiff to "allege that he . . . relied on a misrepresentation *when purchasing the product* . . . .").  The only ad posted at the time (at the store, in zone CA-2) stated that a customer should expect to save $2.40 and pay "$7.63 + tax per pack when you buy 2."



---

[2] The Court retains discretion to revisit and modify its certification order (or order a full decertification) in light of similar developments in litigation and discovery.  *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

*See* ECF No. 59-1, Ex. F to the Hoxsie Decl., at DEF000086.  But Plaintiff testified that he never saw any advertisement expressly listing a specific per-pack price, and thus cannot now claim to have relied on it.  SOF ¶¶ 27-28.  This is true as well for the July 8, 2020 purchase referred to on Page 15 of the Opposition, as well as any other purchase when the only advertisements posted were ads listing a specific per-pack price.[3]

Plaintiff's Opposition lists November 9, 2020 as his final example of a specific transaction in which he did not receive an applicable advertised discount.   Plaintiff, once again, misses the mark. As Circle K explained in its Response to Interrogatory No. 6, the Marlboro discount at issue *was not offered* from August 23, 2020 to November 22, 2020. Accordingly, ***there was no Marlboro Loyalty discount advertised on November 9, 2020 upon which Plaintiff could have relied***.  The only ads during this period were for the Circle K (internal) discount, which Plaintiff concedes were applied.  *See* Opposition at 15.

In short, despite years of litigation, discovery, and now dispositive motion practice, Plaintiff has *still* not identified a single purchase for which "*no discount*" was applied *when it should have been*, as he alleged in the Complaint (and upon which class certification was based).  Therefore, Circle K's Motion should be granted.

## III.   THE ADVERTISEMENTS WERE NOT MISLEADING

As a preliminary matter, each of the three types of pack advertisements must be analyzed separately, because the underlying reliance considerations significantly vary.[4]

### A.   Plaintiff Has Not Established a Genuine Dispute that Circle K's "Save $1 When You Buy 2 Packs" Ads were Misleading to Carton Purchasers.

When the Court denied Circle K's motion to dismiss, it stated that, construing all reasonable inferences in Plaintiff's favor, as it must at the pleading stage, a reasonable consumer might plausibly think the advertised 2-pack discount would be stacked on an

---

[3]  Beyond these inapplicable "examples," Plaintiff does not identify any other purchases or explain how the damage totals were calculated.

[4]  The "or more" and per-pack ads constitute more than *66%* of the ads during the class period, meaning that even the calculations provided by Plaintiff's own damages "expert" vastly overstate the maximum potential exposure to Circle K here.

1   internal bulk carton discount.  ECF No. 16 at 7.  Plaintiff's problem is that, following

2   discovery, he has not brought forth nearly sufficient proof that Circle K's advertisements

3   were misleading to *any* reasonable carton consumer.  *See, e.g.*, *Haskell v. Time, Inc.*, 965

4   F. Supp. 1398, 1406 (E.D. Cal. 1997) (granting summary judgment and finding that

5   plaintiff did not establish by sufficient evidentiary proof that defendant's statements were

6   misleading to a reasonable consumer).  Indeed, Plaintiff has not identified a single other

7   customer in California that was purportedly misled into believing that a pack-directed

8   discount stacked $7.50 worth of additional savings on top of an already discounted bulk

9   carton purchase.  Plaintiff did not even bother to conduct a customer survey.  *See, e.g.*,

10  *Apple Inc. v. Amazon.com Inc.*, 915 F. Supp. 2d 1084, 1090 (N.D. Cal. 2013) ("[I]f an

11  advertisement is not false on its face…the plaintiff must produce evidence, usually in the

12  form of market research or consumer surveys, showing exactly what message was

13  conveyed that was [false].").  Nor did Plaintiff obtain statements from any other Circle K

14  customers.  These faults are glaring given Plaintiff's burden of proof to demonstrate that

15  the ads were misleading to a "significant" portion of reasonable consumers.  Plaintiff has

16  not even come close to this dispositive threshold inquiry.

17       At its core, Plaintiff's claim against Circle K is objectively unreasonable.

18  Consumers do not expect an advertised discount on single (or double) pizza slices to apply

19  to each slice when purchasing a full pie.[5]  Neither do consumers expect a discount on a

20  six-pack of beer to carry exactly over to a case.  So too, consumers would not reasonably

21  expect an advertised one or two-pack cigarette discount to apply to each separate pack of

22  cigarettes in an already-discounted and separately priced bulk carton purchase.  This is

23  common sense.  Plaintiff's silence on this point is deafening.  If the advertisements at issue

24  were actually confusing, Plaintiff would have hundreds of examples of such disgruntled

---

25  [5] This is true whether or not the ad expressly disclaims that the per-slice discount "does not

26  apply to the purchase of an entire pizza."  Plaintiff continually points to Circle K's lack of

    a carton disclaimer as a fact in his favor, but fails to rebut that consumers inherently

27  understand (and common sense dictates) that advertised discounts on separately priced

28  individual items do not apply to each unit in *already-discounted* bulk purchases.

consumers throughout the state. **But Plaintiff has not identified a single impacted consumer in the state**, and therefore cannot refute this common sense position.

### B.    The 2018 "or more" Advertisements Are Not False or Misleading

As for the "2 packs or more" ads, a reasonable consumer would understand that regardless of the number of packs they purchased in a transaction, they would receive only a single $1 or $1.50 savings as advertised – just like the JC Penney customer would expect to save just $10 whether they spent $50 or $100 when faced with an advertisement offering "$10 off your purchase of $25 _or more_." SOF ¶¶ 72-73. Plaintiff does not actually dispute this. _See_ Opposition at 10-11. That alone should result in judgment in Circle K's favor.

Instead, Plaintiff's Opposition merely questions whether the "or more" discounts were actually applied. This is inadequate to meet Plaintiff's burden in opposing summary judgment under Rule 56. _See Celotex Corp. v. Catrett_, 477 U.S. 317, 322 (1986) (stating that once a motion is found supported by evidence, the burden shifts to the non-moving party to provide evidence beyond the pleadings that shows that summary judgment is inappropriate). Contrary to Plaintiff's position, the evidence in this case – including Plaintiff's own purchase data – uniformly shows that the Marlboro and Circle K Tobacco Club discounts applied once per transaction, exactly as advertised (and as clearly stated on the customer's receipt, _see_ ECF No. 59-1, Ex. G to the Hoxsie Decl.). The Opposition concedes that these discounts applied once-per transaction to carton purchases. Opposition at 14-15. And Plaintiff has produced no evidence that these discounts were misleading or inaccurate to any carton consumers.

Plaintiff tries to skirt around this dispositive lack of evidence by pointing to Circle K's initial written discovery responses regarding a lack of discounts applied to carton sales. Plaintiff's reference to Circle K's initial RFP response is inapposite. As discovery progressed, Circle K repeatedly informed Plaintiff that Circle K _never_ automatically applied a $5 or $7.50 (2-pack times five discount) on carton purchases. Accordingly, Circle K has made zero sales applying Plaintiff's undefined $7.50 "2-pack" discount to cartons, and as such its initial discovery response was entirely accurate. In actuality, as

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

demonstrated above, on all instances where Plaintiff claimed he was saving $7.50 per carton, he was in fact buying _packs_ in multiple separate transactions (a scenario not covered under the applicable class definition). Again, Plaintiff's Opposition simply ignores Circle K's clear and accurate account of its advertisements in response to Interrogatory No. 6.

### C.   Advertisements Listing a Specific Per Pack Price are Not Misleading

The Opposition similarly fails to offer any evidence that advertisements listing a specific "per pack" price were misleading. Plaintiff conceded he did not see these advertisements, nor did he conduct any customer surveys or interview any other customers. The failure to identify even a single customer that was misled by these advertisements justifies summary judgment in Circle K's favor. _Cf. Ely Holdings Ltd. v. O'Keeffe's, Inc._, No. 18-cv-06721-JCS, 2021 WL 390946, at *26 (N.D. Cal. Feb. 3, 2021) (granting summary judgment in the defendant's favor where "[Plaintiff] has identified no evidence that any consumer saw or relied on these representations, or that [Plaintiff] was harmed by them," and stating "[t]here is no evidence from which a finder of fact could determine whether the representations are actually misleading in context …").

Moreover, and unlike the "Save $1 when you buy two" ads, which the Court noted might conceivably be "stacked" on top of a bulk discount (but for which there is still no evidence that any actual consumers were ever actually misled), any consumer viewing an ad listing a specific per-pack-price would not expect stacked savings on top of a _separately priced carton_. For example, the customer would not ask "if I save $1 when I buy 2 packs, will I save $5 if I buy a carton." Instead, the customer would have to ask: "If I pay $7.73 per pack when buying two packs, should I expect to pay $77.30 per carton." This is not a theory for potentially stacking discounts; rather, it is a theory for _replacing the carton price entirely_. This is not alleged in Plaintiff's case. Nor could it be, as any reasonable customer would not expect to pay a price of $77.30 if the listed price of a carton is $83. Plaintiff has not demonstrated, nor could he, why a consumer would not simply reject a carton purchase for $83 at the register if she or he were _materially relying_ on an ad showing a "per pack" price of $77.30 for an entire carton.

1

## IV.   PLAINTIFF HAS NOT ESTABLISHED A PRESUMPTION OF RELIANCE

Plaintiff states that Circle K's arguments in its Motion concerning reliance were rejected by the Court in the Class Certification Order.  Opposition at 1, 10.  But Plaintiff has not provided any evidence justifying the supposed "presumption of reliance" found applicable in *In re Tobacco II Cases*.  The presumption is clearly not automatic, as Plaintiff seemingly implies.  Instead, it arises only from occurrence of sufficiently pervasive advertising campaigns.  In *Tobacco II*, for example, there was a "decades-long tobacco advertising campaign" promoting the sale of cigarettes, extending over 40 years by 11 different defendants across multiple media (i.e., across print ads, television, radio, etc.).  *Compare Tobacco II*, 207 P.3d 20, 29 (Cal. 2009), *with Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 1982) (finding the defendant's scope of advertising did not rise to the necessary level, and therefore that individualized cases had to be made for each class member showing reliance).

Plaintiff has not identified any evidence justifying imposition of the *Tobacco II* presumption here.  Circle K's ads ran only for select weeks of the year and only in select markets, and even then, Plaintiff testified that he did not even see any of the ads stating a specific per-pack price – ads spanning two years, from July 2018, November 2018, January 2019, May 2019, March 2019, December 2019, May 2020, and July 2020.  Nor has Plaintiff identified a single other Circle K customer that was *ever* similarly deceived, or who even saw the ads in question.  To that point, Plaintiff's own expert, Mr. Londre, agreed that there were customers that would not have seen or relied on the ads.  All of these deficiencies destroy any purported "presumption" of reliance in this case.

Plaintiff's reference to three internal Circle K documents does nothing to save his claim.  Two of these documents, both from May 1, 2020, concern a single instance of one employee's follow-up regarding a *customer in **Mississippi** asking if there was a **multi-carton discount on Newport** cigarettes*, an entirely separate brand, concerning an inquiry in a separate state and separate Circle K business unit, with no connection to the class defined in this case.  *See* ECF No. 42, Exs. 19 & 20 to the Fisher Decl.  The only other

identified document refers not to customer complaints or advertised discounts but to *internal coding*. *Id.*, Ex. 32 to the Fisher Decl.  Plaintiff seems to believe that Circle K should change its own internal coding procedures for carton sales.  But again, this disagreement over coding has nothing to do with Plaintiff's class as plead or with a valid claim for false advertising.

Plaintiff has not provided a shred of evidence establishing that the ads at issue induced reliance in a significant portion of the general consuming public that purchased a carton over the relevant period.  *See Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496, 509-10 (2003).  This alone warrants summary judgment in Circle K's favor.

## V.   PLAINTIFF'S SUBSEQUENT PURCHASES WERE NOT OBJECTIVELY REASONABLE

Circle K's Motion establishes that, as a matter of law, a consumer cannot continue claiming "reliance" on a particular advertisement after conclusively learning that such advertisement does not apply to his or her purchases.  As a rebuttal, Plaintiff claims that his continuous carton purchases *after* learning that Circle K did not automatically provide a "five times" discount to each carton (and even after suing Circle K) was "consistent with ordinary shopping behavior and human nature."  Opposition at 17.  Plaintiff tellingly fails to cite any evidence in support of this rather novel understanding of "human nature."  As discussed, Plaintiff has failed to identify a single other customer that was purportedly damaged by the advertised cigarette discounts.  This only confirms that Plaintiff's years' long tête à tête with Circle K concerning his preferred carton pricing was *not* the result of "ordinary shopping behavior" or simple "human nature."  Rather this case is, and has always been, solely about *Plaintiff's* specific purchase habits and *his own* objectively unreasonable claim for damages against Circle K.  The Opposition even admits that it should have been readily apparent to Plaintiff that he was not obtaining the discounts he purportedly expected.  *See* Opposition at 15 (stating the differences in prices he actually paid for cartons compared to what should have been paid were in "sharp contrast").

In this vein, Plaintiff misconstrues Circle K's reference to *Davidson v. Kimberly-*

*Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Circle K did not cite that case to argue that Plaintiff lacked standing to pursue injunctive relief based on his inability to rely on future advertisements, as alleged there. Instead, Circle K cited *Davidson* in relation to Plaintiff's subsequent purchases because it is patently unreasonable to believe a $7.50 discount on cartons applied when Plaintiff clearly _knew_ otherwise. In any event, *Davidson* suggests only that a plaintiff "*may* have standing to seek an _injunction_ against false advertising or labeling." *Id.* at 969 (emphasis added). Nothing in *Davidson* undermines the core premise, in this case, that Plaintiff's continuous purchasing of cartons was objectively unreasonable after: (a) the first purchase for which he did not receive a discount he believed he was entitled to; (b) being told that he needed to separate his purchases into five separate transactions, which he then did; and (c) filing a complaint claiming Circle K's advertisements were false and misleading, *cf. Chavez v. Citizens for a Fair Farm Labor Law*, 84 Cal.App.3d 77, 80 (1978) (stating that statements the plaintiff believes to be false are not actionable as fraud); *Quicken Mortg. Corp. v. Bank of Am.*, No. G059249, 2022 WL 189816, at *1 (Cal. Ct. App. Jan. 21, 2022) ("It is axiomatic that a plaintiff cannot reasonably rely on a representation if the plaintiff knows or has information that the representation is false"). Moreover, Plaintiff does not cite any case—and Circle K has found none—where a plaintiff was allowed to recover additional damages (and not just pursue injunctive relief) *after* being made aware that an ad was false or misleading.

If Plaintiff's view is that he "always believed the discount applied," year-round and regardless whether a discount was advertised, Opposition at 19, that view is unsupported by the record, patently unreasonable, and certainly not one that would be shared by other customers that bought cartons **_because of_** *an advertised multi-pack discount*.

## VI.   CONCLUSION

At every turn, Plaintiff's claims in this case have been disproven by the record and/or negated by his own testimony. Stated simply, there is no _genuine_ issue of material fact preventing summary judgment in Circle K's favor. The Motion should be granted.

1   DATED:  January 30, 2023      GREENBERG TRAURIG, LLP

2

3                       By */s/ Tyler R. Andrews*

4                         Tyler R. Andrews
                           Matthew P. Hoxsie (*pro hac vice*)

5                       Attorneys for Defendant,
                       CIRCLE K STORES INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

**STATE OF CALIFORNIA**

**COUNTY OF ORANGE**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **18565 Jamboree Road, Suite 500, Irvine, CA  92612.**

On Mon, Jan 30, 2023, I served the **REPLY IN SUPPORT OF SUMMARY JUDGMENT**, on the interested parties, addressed as follows:

Stephen B. Morris, Esq.
THE LAW OFFICES OF STEPHEN B. MORRIS
2305 Historic Decatur Rd., Suite 100
San Diego, CA  92106
Telephone:  619.985.4462
E-Mail:  morris@sandiegolegal.com

 Attorneys for Plaintiff

The documents were served by the following means:

[X]	**[BY E-MAIL]**  By transmitting via e-mail the document(s) listed above to the addresses set forth below on this date.  This method of service was made pursuant to the Court's electronic filing system.

[X]	**(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on Mon, Jan 30, 2023 at San Clemente, California.

GREENBERG TRAURIG, LLP
By */s/ Tyler R. Andrews*
Tyler R. Andrews